UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMITA FULGHEN,

    Plaintiff,

v.

Case No. 10-11148

Honorable Patrick J. Duggan

JOHN E. POTTER, Postmaster General,

    Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 16, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

On March 22, 2010, Damita Fulghen ("Plaintiff") filed this *pro se* action against John Potter, United States Postmaster General, alleging retaliation and employment discrimination on the basis of a disability. Plaintiff seeks recovery under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Before the Court is Defendant's Motion for Summary Judgment, filed on August 13, 2010. The Court dispenses with oral argument pursuant to E. D. Mich. LR 7(f)(2), and for the reasons stated below, grants Defendant's Motion.

### I. Factual and Procedural Background

In early 2005, Plaintiff worked as a Customer Service and Sales Associate at the

United States Postal Service store in the Penobscot Building, located in Detroit, Michigan. Plaintiff suffers from chronic ulcerative colitis, an incurable digestive tract condition that causes intermittent abdominal pain and diarrhea. Pl.'s Br. Exs. 8, 9.

Postal Service regulations require regular attendance, and employees must report by their scheduled starting time each workday. Def.'s Br. Ex. 2 at 2-3. Plaintiff was late for work seven times between March 2, 2005 and March 17, 2005. Pl.'s Br. Ex. 3. Plaintiff asserts that she was late because of her medical condition, and on several occasions, she reported as her reason for tardiness that she was "indisposed." Pl.'s Br. 8. She also took leave of approximately four hours on March 7, 2005.[1] Pl.'s Br. Ex. 3. On April 4, 2005, Jackson asked Plaintiff if she needed to begin her shift at 8:30 a.m. each day, rather than her scheduled start time of 8:00 a.m. Pl.'s Br. Ex. 39. Plaintiff declined the proposed schedule change, stating that she needed to leave work at 4:30 p.m. each day. *Id.* Plaintiff was again late for work on April 7, 2005. Pl.'s Br. Ex. 3.

On April 14, 2005, Plaintiff's supervisor, Lynette Jackson, issued her a Letter of Warning, indicating that Plaintiff had failed to adhere to Postal Service attendance regulations. *Id.* The letter stated that it was given to afford Plaintiff an opportunity to correct the issue. *Id.* Plaintiff responded by filing a grievance through her union. The parties later settled this grievance, and the Letter of Warning was accordingly modified to an Official Discussion. Def.'s Br. Ex. 4.

On May 3, 2005, Jackson observed Plaintiff holding a "G-10 penalty envelope"

---

[1] The parties dispute whether Plaintiff scheduled the March 7, 2005 leave in advance.

addressed to a union official. Def.'s Br. Ex. 5. Jackson informed Plaintiff that these envelopes could not be used for personal correspondence. *Id.* Plaintiff then made a phone call, and Jackson asked her if she was on her break. *Id.* Plaintiff allegedly responded by asking, "What do you think?" *Id.* Jackson claims that she told Plaintiff to count this time as her break. *Id.* Fifteen minutes later, Plaintiff returned to work at the store's customer window. *Id.* Defendant claims that Plaintiff subsequently took a break at 10 a.m., her usual break time. *Id.* Jackson observed a number of customers waiting in line, and announced over the intercom that clerks were needed at the window, but Plaintiff did not return until 10:15 a.m., the usual end of her break. *Id.*

The following day, Jackson issued Plaintiff a written Notice of Suspension, stating that she was to be suspended for seven days beginning June 6, 2005. Def.'s Br. Ex. 5. The Notice indicated that Plaintiff violated Postal Service regulations by failing to follow the instructions of her supervisor. *Id.* Plaintiff filed a grievance challenging this suspension. On May 27, 2005, the parties settled the grievance, rescinding the suspension before it took effect. Def.'s Br. Ex. 6.

On May 29, 2005, Plaintiff filed an administrative discrimination complaint, alleging that her ulcerative colitis constituted a disability, and that Jackson gave her the Letter of Warning and the Notice of Suspension because of this alleged disability. Def.'s Br. Ex. 7. Plaintiff also asserted that the Letter of Warning and Notice of Suspension were the result of retaliation. *Id.*

On June 6, 2005, Plaintiff called to inform Jackson that she would be late for work due to illness. Plaintiff requested leave under the Family and Medical Leave Act

3

("FMLA") for this absence. Jackson contacted Constance Moore, the Postal Service's local FMLA Coordinator, to determine whether the request should be approved. Pl.'s Br. Ex. 17. Moore sent Jackson a message stating that Plaintiff's existing FMLA documentation "was not properly certified by the physician to cover tardiness." Def.'s Br. Ex. 14 at 152. Jackson therefore denied Plaintiff's request for FMLA leave. Moore sent a letter to Plaintiff the next day, indicating that she must submit certification to verify her medical excuse for the previous day's absence.

On June 7, 2005, Jackson informed Plaintiff that effective June 13, 2005, her shift would be changed to her original "bid" shift of 9:15 a.m. to 6:15 p.m. Pl.'s Br. Ex. 46. Plaintiff responded by writing letters to the local Area Manager and United States Postmaster General John Potter. Pl.'s Br. Exs. 47-48. The following day, Plaintiff filed a second administrative discrimination complaint, alleging that the shift change constituted retaliation against her. Approximately one week after Plaintiff's new schedule took effect, the acting Area Manager informed Jackson that after one year of working a different schedule, Plaintiff could not be placed on her original bid schedule. Def.'s Br. Ex. 14 at 100. Jackson apologized to Plaintiff and explained that the following Monday, she should report for work at her usual starting time of 8:00 a.m. *Id.*

As of July 1, 2005, Plaintiff had not submitted additional documentation to the Postal Service's Medical Unit concerning her leave request. Moore sent her a letter that day, stating that because Plaintiff had not provided updated medical documentation, her June 6, 2005 absence was not FMLA-protected. On July 12, 2005, Plaintiff obtained a letter from her treating physician stating that she "[s]ometimes . . . cannot come to work because of

4

her illness and sometimes in the morning . . . gets late." Pl.'s Br. Ex. 8. Plaintiff submitted this letter to the Postal Service's Medical Unit.

Both of Plaintiff's administrative complaints were investigated at a hearing on April 30, 2007, before Administrative Judge David Treeter of the Equal Employment Opportunity Commission. On June 5, 2007, Administrative Judge Treeter issued a decision, finding that the Postal Service had not discriminated or retaliated against Plaintiff. Def.'s Br. Ex. 11. He concluded that Jackson was unaware of the nature of Plaintiff's impairment, and that Plaintiff had not previously submitted documentation supporting her use of FMLA leave in instances of tardiness. *Id.* at 6. Administrative Judge Treeter also concluded that Plaintiff's suspension was not retaliatory; rather, she was suspended for taking a break when Jackson had instructed her to assist customers at the store's window. *Id.* Administrative Judge Treeter accordingly entered judgment for Defendant. *Id.* at 7. Plaintiff appealed to the Equal Employment Opportunity Commission's Office of Federal Operations, but her appeal was denied on September 30, 2009. The Office of Federal Operations denied reconsideration on January 21, 2010.

Plaintiff responded by filing this action on March 22, 2010, asserting claims of retaliation and employment discrimination on the basis of a disability. Defendant moved for summary judgment on August 13, 2010.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient

5

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Analysis

**A. Plaintiff's Disability Discrimination Claim**

The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, provides the exclusive remedy for a federal employee alleging employment discrimination based on a disability. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). A plaintiff may use either direct or circumstantial evidence to prove her case. *Id.* "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial evidence, by contrast, is evidence from which the jury may infer discriminatory intent. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). Absent direct evidence of discriminatory intent, a plaintiff's claims are subject to a burden-shifting analysis:

> The initial burden rests with the plaintiff to establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. Should the employer carry this burden, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination.

*Jones*, 488 F.3d at 404 (citations omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

Plaintiff argues that she received the Letter of Warning, Notice of Suspension, and schedule change because of her ulcerative colitis, despite providing documentation justifying FMLA leave. As she has not produced direct evidence of discriminatory intent, the Court applies the burden-shifting analysis. To establish a prima facie case of employment discrimination on the basis of a disability, a plaintiff must establish: (1) that she is disabled; (2) that she is otherwise qualified for the job, with or without reasonable

7

accommodation; (3) that she suffered an adverse employment action; (4) that her employer knew or had reason to know of her disability; and (5) that, following the adverse employment action, either she was replaced by a nondisabled person or her position remained open. *Id.* The final element of the prima facie case may also be satisfied by showing that similarly situated non-protected employees were treated more favorably. *Id.*

Defendant contends that Plaintiff has not suffered an adverse employment action, and the Court agrees. An employer's action is not considered adverse simply because it makes the employee unhappy or resentful. *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999). Only an action that represents a change in the terms and conditions of employment gives rise to a discrimination claim. *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). The Letter of Warning merely noted Plaintiff's failure to adhere to attendance regulations for the purpose of allowing her to correct the issue. Pl.'s Br. Ex. 3. The Letter did not modify in any way the terms and conditions of Plaintiff's employment, and cannot be considered an adverse employment action. As for the Notice of Suspension, it is settled that a discrimination claim does not arise until a proposed action is implemented. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004). Plaintiff's proposed suspension was rescinded before it began, and thus cannot support her discrimination claim. Her schedule change is not actionable because of its short duration. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (finding *de minimis* a ten-day change in the terms of employment where the employee experienced no economic loss). Plaintiff's starting time was changed from 8:00 a.m. to 9:15 a.m. for one week, and she has pointed to no consequences resulting from this inconvenience. This is insufficient to support a

8

discrimination claim. Plaintiff has failed to identify an adverse employment action, and thus cannot establish her prima facie case. Because Plaintiff carries this burden, Defendant should be granted summary judgment on the disability discrimination claim.

**B. Plaintiff's Retaliation Claim**

The *McDonnell Douglas* burden-shifting analysis also applies to retaliation claims under the Rehabilitation Act. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). A prima facie case of retaliation has four elements: (1) the plaintiff engaged in legally protected activity; (2) the defendant knew about the plaintiff's exercise of this right; (3) the defendant took an employment action adverse to the plaintiff; and (4) the protected activity and the adverse employment action are causally connected. *Id.*

Plaintiff alleges retaliation based on the same actions supporting her discrimination claim. The Court has concluded, however, that the Letter of Warning, Notice of Suspension, and schedule change did not constitute adverse employment actions. Because Plaintiff must identify an adverse employment action as part of her prima facie case, her retaliation claim fails as a matter of law.

### IV. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:

Vanessa Miree Mays

Damita Fulghen
18651 Marlowe
Detroit, MI 48235